**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Arthur Lee STEPHENS, Defendant–
Appellant.**

**No. 96–5541.**

United States Court of Appeals,
Sixth Circuit.

Argued April 24, 1997.

Decided July 2, 1997.

William Cohen, Lawrence W. Moon, Jr., (argued and briefed), Asst. U.S. Attorneys, Office of the U.S. Attorney, Nashville, TN, for Plaintiff–Appellee.

James G. Thomas (argued and briefed), Brian K. Frazier, Neal & Harwell, Nashville, TN, for Defendant–Appellant.

Before: JONES, SUHRHEINRICH and SILER, Circuit Judges.

starting a business in return for a promised share of the profits." *The American Heritage Dictio-*    *nary,* at 579 (2d ed.1982).

## OPINION

SILER, Circuit Judge.

Defendant, Arthur Lee Stephens, appeals his conviction and sentence following his guilty plea to possession with intent to distribute cocaine and marijuana (two counts each) and possession of a firearm in relation to a drug trafficking crime. The key issue is whether the possession of two separate caches of cocaine on the same date but at different locations constitutes two separate offenses. For reasons stated herein, we REVERSE.

### I.

After several tips indicating that Stephens was importing large quantities of cocaine from Florida, officers of the local Drug Task Force set up surveillance at the home of Sabrina Ann Mueller, Stephens's girlfriend and subsequent codefendant. Mueller and Stephens had just returned from Florida with a new load of cocaine. The cocaine was stored in Mueller's house until Stephens came for it. On the day of Stephens's arrest the surveillance team observed Mueller place an oblong box, a brown suitcase, and a small brown paper sack into a white van parked in the driveway. Later, Stephens arrived with the keys to the van and drove away without ever having entered Mueller's house. The law enforcement officers followed Stephens and subsequently stopped him. Stephens then consented to a search of the van, which revealed approximately five kilograms of cocaine ("van cocaine"), a paper bag of marijuana, digital scales, and a loaded handgun found under the driver's seat.

After Stephens later consented to a search of his residence, the officers proceeded to his home, arriving some twenty minutes after the search of the van. During the consensual search of the house, cocaine ("house cocaine") and marijuana were found in a green ammunition box behind the refrigerator in the basement. These drugs were acquired during an earlier drug buying trip to Florida

made by Stephens alone. Stephens explained to the officers that he normally went to Florida every three to four weeks to purchase cocaine. He also explained how he would hide the drugs in his back yard, and that, in fact, he had just dug up the house cocaine from the back yard that morning. The house cocaine totaled approximately 115 grams. Three firearms were found in the house.

As a result of the searches of the van and house and other investigations, Stephens and Mueller were indicted on eight counts. Stephens was named in all counts; Mueller was named only in the first count. Counts one and two both charged possession with intent to distribute cocaine, on or about December 21, 1991, in violation 21 U.S.C. § 841(a)(1), premised on the van and house cocaine, respectively. Count three charged Stephens with marijuana possession with intent to sell, also in violation of section 841(a)(1). Counts four and five charged Stephens with carrying a firearm in connection with the van cocaine and house cocaine, respectively, both in violation of 18 U.S.C. § 924(c). Counts six, seven, and eight involved separate drug and weapon violations arising from incidents that occurred at a later date.

On March 21, 1994, Stephens pleaded guilty to counts one through seven pursuant to a plea agreement with the government. Later, the government moved to dismiss the section 924(c) gun charge in count five in light of *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).

Finally, at sentencing, the government, having abandoned count five, argued instead that a two-level upward adjustment under United States Sentencing Guideline (USSG) § 2D1.1(b)(1) was warranted, with count two serving as the required predicate offense for the enhancement.[1] Stephens argued that pursuant to *United States v. Woods,* 568 F.2d 509 (6th Cir.), *cert. denied,* 435 U.S. 972, 98 S.Ct. 1614, 56 L.Ed.2d 64 (1978), counts one and two constituted but one possession with

---

1. Because count two no longer served as a predicate for the section 924(c) charge in count five due to the government's motion to dismiss that count, count two could serve as a predicate for the section 2D1.1(b)(1) enhancement. Count one

could not serve as the basis for the section 2D1.1(b)(1) enhancement because it still had a section 924(c) charge attached to it, through count four.

intent to distribute cocaine offense, thus rendering no foundation for applying the two-level upward adjustment of section 2D1.1(b)(1). As a result of this alleged multiplicity, Stephens sought dismissal of count two. The district court, however, rejected Stephens's argument and imposed a section 2D1.1(b)(1) two-level upward adjustment on count two, thus resulting in a sentence of 236.25 months, followed by four years' supervised release.[2]

## II.

■ The issue in this case involves the application of law to a given set of facts. Specifically, the issue concerns the interpretation of a statute, 21 U.S.C. § 841, as applied to the undisputed facts. Such a scenario presents a quintessential pure question of law that this court reviews de novo. *United States v. Brown*, 988 F.2d 658, 660 (6th Cir. 1993); *In re Griggs*, 965 F.2d 54, 56 (6th Cir.1992).

## III.

■ The facts of this case are undisputed. Two stashes of the same drug were found on the same day but were charged in two separate counts, one of which served as the section 924(c) predicate, the other of which served as the section 2D1.1 predicate.

Stephens argues that the district court erred in not merging the two stashes of cocaine under the same count. Specifically, Stephens argues that his case falls squarely under *United States v. Woods*, which, according to Stephens, "holds that the simultaneous possession of multiple 'stashes' of the same controlled substance—even in different locations—gives rise to but one offense under 21 U.S.C. § 841(a)(1)."

The district court, however, found that the case at bar was "factually distinguishable from the Woods case" and refused to dismiss

count two. In reaching this conclusion, the district court seemed to attach particular significance to the following facts: (1) the van cocaine was from the most recent trip to Florida, while the house cocaine was from an earlier trip; (2) the house cocaine was clearly at a different and far-away location; and (3) Mueller was involved in and charged with the van cocaine, while she apparently had nothing to do with the house cocaine. Accordingly, the district court granted the section 2D1.1(b) enhancement.

The government argues that *Woods* should be "read narrowly to apply to its own facts, which are materially distinguishable from Stephens's case." Also, the government notes that *United States v. Pope*, 561 F.2d 663, 669 (6th Cir.1977), which holds that simultaneous possession of two distinct controlled substances with intent to distribute can serve as the basis for two separate counts, is still good law and should apply to the present case because the two stashes of cocaine in this case, while both involving the same drug, nonetheless have separate identities.

However, the facts of this case are not materially distinguishable from *Woods*. In *Woods*, the defendant was charged with three counts of possession with intent to distribute heroin all in violation of 21 U.S.C. § 841(a)(1). The three counts were premised on three different caches of heroin. One cache was found in the trunk of defendant's car and another was found under the front seat of the car when defendant was arrested at a Detroit airport. The third cache had been sold by a codefendant to an undercover officer earlier in the day at an unspecified separate location. The government argued that, because the heroin in the three counts had a separate identity[3] and because the drugs were found in three separate locations, the separate counts and convictions were appropriate. However, this court held that no

---

**2.** The court ultimately determined Stephens's appropriate sentencing range to be 236.25 to 281.75 months. Stephens's theory would yield a final sentencing range of 199.5 to 236.25 months. Clearly, Stephens's ultimate sentence of 236.25 years falls into both ranges. Thus, on remand, the district court may grant him the identical sentence.

**3.** The separate identity theory was espoused by the government because the three caches were all found to possess varying percentages of purity, thus suggesting that they were acquired from different sources and had not been mixed.

precise percentages of purity nor any particular amount of heroin needed to be proved at trial in order to establish a defendant's violation of 21 U.S.C. § 841(a)(1). "It is sufficient if the substance is in fact heroin and if it is measurable." *Woods*, 568 F.2d at 512. Thus, proof that the defendant possessed any of the heroin in the three caches could sustain a conviction under any of the three counts. The court stated, "we see no indication that Congress intended to permit multiplication of the offenses of possession at any given time by a defendant upon evidence that the heroin may merely have been separately packaged or stashed." *Id.* at 513–14. Thus, the defendant's claim of multiplicity had merit and this court remanded the case with orders to vacate the convictions and sentences on two of three counts.

In the case at bar, as in *Woods*, there were two different caches of cocaine with two distinct identities, i.e, one cache came from an earlier drug buying trip to Florida. Furthermore, proof that Stephens possessed either stash of cocaine would sustain his conviction under either count one or two.

Thus, the strictures of *Woods* control and require that Stephens be convicted of only one count of possession with intent to distribute cocaine. Therefore, the district court erred by failing to merge the two offenses. It also erred in granting the firearm enhancement under USSG § 2D1.1, inasmuch as one count can only serve as the predicate offense to the section 924(c) charge. Thus, we REVERSE the decision of the district court and REMAND the case for resentencing with orders that count two and its concomitant section 2D1.1 enhancement be VACATED.