UNITED STATES of America, Appellee,

v.

Lee Autry WRIGHT, Appellant.

No. 82-2179.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1983.

Decided April 14, 1983.

James K. Steitz, St. Louis, Mo., for appellant.

Thomas E. Dittmeier, U.S. Atty., Larry D. Hale, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before HEANEY, McMILLIAN and ARNOLD, Circuit Judges.

PER CURIAM.

Lee Autry Wright appeals from his conviction for violating 21 U.S.C. § 841(a)(1) by possessing a controlled substance, pentazocine, with intent to distribute. Wright was sentenced to three years imprisonment to be followed by a special parole term of five years. We affirm.

I.

FACTS

In February, 1982, the St. Louis Police Department began an investigation of Wright for drug-related activities. In connection with this investigation, St. Louis police officers obtained a warrant on March 1, 1982, to search the residence located at 5276 Thrush for marijuana, cocaine and pentazocine. At approximately noon that same day, the police executed the warrant. Earline Guthrie and several small children were in the residence, but defendant Wright was not present.

During the search of the house, the police officers discovered in the first floor rear bedroom a locked safe and a dressing chair with a hollowed seat. The chair contained 200 tablets of pentazocine and 200 tablets of pyribenzamine, which produce a heroin-

like effect when taken together. Guthrie informed the police officers that the safe belonged to defendant Wright. When Guthrie was unable to open the safe, the police officers photographed it and then placed it in the trunk of a police car.

While the police officers were loading the safe into the car, they observed Wright and another individual drive by the area. The police pursued the defendant, and eventually stopped his vehicle. He was arrested and advised of his constitutional rights. The police then took Wright back to 5276 Thrush. He initially refused to open the safe, but did so after the officers told him that they would force it open if he refused to cooperate. In the safe, the police found an additional 120 tablets of pentazocine and 120 tablets of pyribenzamine, $1,130 in cash, an airplane ticket in the defendant's name, and some of his personal papers.

On August 5, 1981, Wright was charged in a one-count indictment with possession of 320 tablets of pentazocine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Prior to trial, he filed motions to suppress the seized evidence and/or to quash the search warrant, and to suppress the statements he made after his arrest. The district court denied these motions after a preliminary hearing. It subsequently found Wright guilty as charged.[1] He now appeals.

## II.

## DISCUSSION

■ The defendant raises several issues on appeal. He first contends that the district court erred in admitting into evidence copies of the search warrant, warrant application, and affidavits in support of the ap-

plication because they were not properly authenticated. We disagree.

St. Louis Police Detective Joseph Murphy identified the challenged copies of his search warrant application and supporting affidavit. He also described the warrant issued by the St. Louis Circuit Court. Although it would have been better practice to submit certified copies, this identification procedure satisfied Fed.R.Evid. 901(b)(1), which permits authentication by "testimony of a witness with knowledge * * * that the matter is what it is claimed to be." Indeed, the defendant does not seriously contend that the challenged documents are not authentic.

Wright next argues that the district court erred in denying his motion to suppress the tablets found in the safe because the safe was not explicitly included in the search warrant, it did not fall within the plain view exception, and he did not voluntarily consent to opening it.

■ We believe that the warrant obtained by the police officers permitted them to search the safe. In *United States v. Ross,* 456 U.S. 798, 821, 102 S.Ct. 2157, 2170, 72 L.Ed.2d 572, 591 (1982), the Supreme Court stated that "[w]hen a *legitimate search* is under way and when its purpose and limits have been *precisely defined* [emphasis added]," a warrant that authorizes an officer to search a home for certain objects also provides authority to open containers in which those objects reasonably might be found. The warrant in this case explicitly authorized the police to search the residence at 5276 Thrush for marijuana, cocaine and pentazocine. These drugs obviously could fit within the safe and reasonably could be expected to be found in it. Under these circumstances, the police officers did not exceed the scope of their warrant in searching the safe, and the seizure of the items contained in it thus was lawful.[2] *Accord United States v. Newman,* 685

---

1. Wright waived his right to a jury trial.

2. Because of this holding, we need not decide whether Wright voluntarily consented to open-

ing the safe, or whether the safe was properly searched under the "plain view" doctrine.

F.2d 90, 92 (3d Cir.1982) (when warrant authorized officers to search office for a shotgun, ammunition and documents, their search of a brief case found in office was lawful; but officers could not have lawfully searched the brief case if the warrant only authorized a search for a shotgun); *United States v. Morris,* 647 F.2d 568, 572–573 (5th Cir.1981) (warrant to search house for cash authorized search of locked jewelry box found inside that house). The district court, therefore, did not err in allowing the introduction of the pentazocine found in the safe.

■ Wright also argues that the court below erred in denying his motion to dismiss the indictment as duplicitous. Duplicity is the improper joining in a single count of two or more distinct and separate offenses. *United States v. Starks,* 515 F.2d 112, 116 (3d Cir.1975). The defendant claims that because the police discovered the 320 pentazocine tablets in two places at two different times, there were two offenses: first, possession with intent to distribute the 200 tablets in the chair; and, second, possession with intent to distribute the 120 tablets in the safe.

The defendant's position is plainly untenable. At the time the police officers entered the residence at 5276 Thrush, the illegal drugs were located in a single room in that house. Wright's possession of the pentazocine thus occurred at one time and in one location. This result is not altered by the fact that the defendant kept the tablets in two different containers within the same bedroom. *See United States v. Williams,* 480 F.2d 1204, 1205 (6th Cir.1973) (defendant could be convicted of only one count of possession of heroin, rather than four counts, when agents found four separate containers of heroin in one safe). Therefore, the government properly charged Wright with only one offense, and the indictment was not duplicitous.

■ Finally, the defendant urges that there was insufficient evidence to support his conviction. Specifically, he contends that the government did not prove that he had actual or constructive possession of the drugs because no witness testified that he lived at 5276 Thrush or that he owned the home, and because the evidence showed that many individuals lived in the residence. Again, we can find no merit to the defendant's claim.

After carefully reviewing the record, we are convinced that the evidence was sufficient to establish that Wright possessed the pentazocine tablets seized by the police officers. The police found a man's clothing and a photograph of Wright in the bedroom where the drugs and safe were discovered. Wright was the only person at the 5276 Thrush residence who could open the safe, which he acknowledged was his after his arrest by asking the police officers, "Where are you going with my safe?" Guthrie also told the police that the safe belonged to Wright when they searched the house. Finally, and most importantly, after the police officers seized the drugs from the safe, Wright stated that Guthrie did not know anything about the tablets and that they were his. Based on this evidence, we cannot say that the court below erred in denying Wright's motion for a judgment of acquittal.

For the foregoing reasons, the judgment of the district court is affirmed.